IN THE SUPREME COURT OF NORTH CAROLINA

No. 329A24

Filed 14 August 2026

STATE OF NORTH CAROLINA

v.

CHARLES LEON GARMON

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 296 N.C. App. 725 (2024), finding no error in part and vacating in part judgments entered on 4 August 2022 by Judge Keith O. Gregory in Superior Court, Union County, and remanding the case for resentencing. On 21 March 2025, the Supreme Court allowed the State's petition for discretionary review. Heard in the Supreme Court on 4 November 2025.

*Jeff Jackson, Attorney General, by Zachary K. Dunn, Special Deputy Attorney General, for the State-appellant.*

*Jarvis John Edgerton IV for defendant-appellee.*

RIGGS, Justice.

During a traffic stop, officers found, *inter alia*, a bookbag with drug paraphernalia and trafficking weights of controlled substances in Charles Garmon's vehicle. On 14 January 2021, Mr. Garmon was indicted for various crimes, including keeping or maintaining a vehicle for the purpose of keeping or selling controlled substances ("keeping or maintaining a vehicle charge"). Exactly one year prior, Mr.

Garmon had been indicted for attaining habitual felon status, stemming from three felony convictions in 2001, 2009, and 2013. Mr. Garmon moved to dismiss the keeping or maintaining a vehicle charge, but the trial court denied his motion, and he was convicted of trafficking in opioids by possession, trafficking in opioids by transportation, possessing drug paraphernalia, and keeping or maintaining a vehicle for the keeping or selling of controlled substances. He then pleaded guilty to attaining habitual felon status.

On appeal, Mr. Garmon filed a motion for appropriate relief, claiming that his habitual felon indictment was untimely because it was filed before he committed the principal felonies at issue here. The Court of Appeals, bound by precedent, granted his motion for appropriate relief. *State v. Garmon*, 296 N.C. App. 725, 726 (2024). Mr. Garmon also challenged the trial court's denial of his motion to dismiss the keeping or maintaining a vehicle charge. The Court of Appeals' majority held that the trial court did not err by denying his motion to dismiss. *Id.* at 734. Judge Hampson dissented, claiming that the State failed to meet its burden on whether Mr. Garmon used the vehicle for the purpose of keeping controlled substances. *Id.* at 739 (Hampson, J., dissenting).

We hold that the Court of Appeals erred by granting Mr. Garmon's motion for appropriate relief. The plain language of the Habitual Felon Act does not prohibit the filing of habitual felon indictments before the principal felony indictment, so Mr. Garmon's habitual felon indictment was not improper. We also hold that the State

did not present more than a scintilla of evidence that Mr. Garmon used the vehicle to keep controlled substances, but we remand for further proceedings to determine whether he used the vehicle to sell controlled substances. Therefore, we reverse in part the Court of Appeals' judgment and remand the case.

## I. Factual and Procedural Background

On 12 October 2020, after receiving information from a confidential informant, officers conducted an interdiction operation to search for a small, silver car with body damage. An officer identified Mr. Garmon's small, silver Hyundai car with body damage, recognized Mr. Garmon, and initiated a traffic stop because he knew Mr. Garmon did not have a valid driver's license. When Mr. Garmon admitted that he did not have a license, the officer asked Mr. Garmon to step out of the vehicle and conducted a *Terry* frisk. The officer did not find any weapons but detained Mr. Garmon while he ran a search of the vehicle's registration[1] and another officer conducted a K9 search of the vehicle.

During the K9 search, a police dog circled the exterior of Mr. Garmon's vehicle and alerted at the lowered driver's side window. The handling officer searched Mr. Garmon's car and found a black bookbag in the front passenger floorboard area containing a digital scale, plastic bags (including some with the corners cut), a bag with a leafy green substance, a bag with a crystallized substance, a bag with a white

---

[1] The officer who stopped Mr. Garmon testified that he could not recall whether Mr. Garmon was registered as the owner of the vehicle.

powdery substance, pills, a marijuana grinder, and eye drops. The officer also found a handgun under the passenger seat, ammunition in the car, and a folded, brown piece of paper with a white powdery substance in the center console cup holders. While the bookbag did not contain any identifying information, several items in the car had Mr. Garmon's name on them, including a Social Security card, Bank of America letter, package, and hotel receipt from the day of the search. While officers conducted the K9 search, Mr. Garmon stated, "I got to make money somehow. That's all I know how to do. I know it ain't right, but I just do it for my kids."

Mr. Garmon was indicted for attaining habitual felon status on 14 January 2020, several months before the traffic stop. The three felonies supporting his habitual felon indictment occurred on 23 June 2000, 21 November 2007, and 25 March 2012. He was convicted of the three felonies in 2001, 2009, and 2013.

One year later, on 14 January 2021, Mr. Garmon was indicted for trafficking in opioids by possession in violation of N.C.G.S. § 90-95(h), trafficking in opioids by transportation in violation of N.C.G.S. § 90-95(h), possession of drug paraphernalia in violation of N.C.G.S. § 90-113.22, and maintaining a vehicle that was used for keeping or selling a controlled substance in violation of N.C.G.S. § 90-108(a)(7).[2] Mr. Garmon's trial began on 1 August 2022.

---

[2] Mr. Garmon was also indicted for possession of a firearm by a felon, possession of methamphetamine, and possession with intent to sell or deliver (PWISD) oxycodone on 14 January 2021. The State voluntarily dismissed the possession of methamphetamine and PWISD oxycodone charges, and the jury found Mr. Garmon not guilty of possession of a firearm by a felon.

At trial, an expert witness from the State Crime Lab testified that the pills in the bookbag contained fentanyl and heroin and that the powder contained fentanyl. The crystal substance from the bookbag and the powder on the brown piece of paper were not tested because the crime lab did not test beyond the "highest charge," and the other substances had already reached trafficking weight. Mr. Garmon moved to dismiss the keeping or maintaining a vehicle charge, but the trial court denied his motion.

The jury found Mr. Garmon guilty of trafficking in opioids by possession, trafficking in opioids by transportation, possession of drug paraphernalia, and keeping or maintaining a vehicle for the keeping or selling of controlled substances. At sentencing, Mr. Garmon pleaded guilty to attaining habitual felon status. The trial court sentenced him to seventy to ninety-three months for the trafficking in opioids by possession, trafficking in opioids by transportation, and possession of drug paraphernalia charges, and forty-four to sixty-five months for the keeping or maintaining a vehicle charge, to run consecutively. Mr. Garmon entered a written notice of appeal on 11 August 2022. He also filed a motion for appropriate relief in the Court of Appeals on 9 February 2024, claiming that the trial court did not have subject matter jurisdiction to enter his guilty plea to attaining habitual felon status because his habitual felon indictment predated the traffic stop and the resulting charges. *See Garmon*, 296 N.C. App. at 732–33.

The Court of Appeals held that the trial court did not err by denying Mr.

Garmon's motion to dismiss the keeping or maintaining a vehicle charge but held

that it was "bound by precedent" to grant Mr. Garmon's motion for appropriate relief.

*Id.* at 726. The Court of Appeals thus vacated and remanded to the trial court for

resentencing. *Id.* at 733–35. Judge Hampson dissented and would have held that

the trial court erred in denying Mr. Garmon's motion to dismiss because the State

failed to meet its burden that Mr. Garmon used the vehicle for the keeping of drugs.

*Id.* at 739 (Hampson, J., dissenting). He would have reversed Mr. Garmon's

conviction on the keeping or maintaining a vehicle charge. *Id.* Mr. Garmon filed a

notice of appeal based on Judge Hampson's dissent on 7 January 2025. The State

filed a petition for discretionary review, which we allowed on 21 March 2025.

## II. Standard of Review

This Court reviews the denial of a motion to dismiss de novo and "must view

the evidence in the light most favorable to the State, giving the State the benefit of

all reasonable inferences." *State v. Calderon*, 388 N.C. 700, 706 (2025) (quoting *State

v. Barnes*, 334 N.C. 67, 75 (1993)). When deciding a motion to dismiss, " 'the trial

court need determine only whether there is substantial evidence of each essential

element of the crime and that the defendant is the perpetrator.' Substantial evidence

is that amount of relevant evidence necessary to persuade a rational juror to accept

a conclusion." *State v. Mann*, 355 N.C. 294, 301 (2002) (citation omitted) (quoting

*State v. Call*, 349 N.C. 382, 417 (1998)). "If there is more than a scintilla of competent

evidence to support the allegations in the warrant or indictment, it is the court's duty

to submit the case to the jury." *State v. Horner*, 248 N.C. 342, 344–45 (1958); *see also State v. Powell*, 299 N.C. 95, 99 (1980).

The sufficiency of an indictment is also reviewed de novo. *State v. Applewhite*, 386 N.C. 431, 434 (2024); *State v. Stewart*, 386 N.C. 237, 240 (2024).

## III.    Analysis

Mr. Garmon challenged his habitual felon indictment as untimely and claimed that the trial court erred by denying his motion to dismiss. The Court of Appeals granted Mr. Garmon's motion for appropriate relief and vacated his guilty plea to attaining habitual felon status. *Garmon*, 296 N.C. App. at 734. We hold that the Court of Appeals erred by granting his motion for appropriate relief and that habitual felon indictments may be filed before principal felony indictments. The Court of Appeals also held that the trial court did not err by denying Mr. Garmon's motion to dismiss the keeping or maintaining a vehicle charge. *Id.* at 732. We hold that the State failed to present more than a scintilla of evidence that Mr. Garmon kept controlled substances in the vehicle under the subsection 90-108(a)(7) definition but, because the State may have sufficiently proved that he kept or maintained the vehicle for the purpose of selling controlled substances, we remand for further proceedings on the issue of whether the trial court erred in denying Mr. Garmon's motion to dismiss.

**A. The Court of Appeals erred by granting Mr. Garmon's motion for appropriate relief because North Carolina statutes do not prohibit the filing of a habitual felon indictment before the principal felony indictment.**

-7-

If a person has been convicted of or pleaded guilty to three separate felonies, district attorneys may, in their discretion, charge defendants with attaining habitual felon status by filing an indictment. N.C.G.S. §§ 14-7.1, -7.3 (2025). The habitual felon indictment must be "separate from the indictment charging him with the principal felony" and should include the dates the prior felonies were committed, the dates the defendant pleaded guilty to or was convicted of the prior felonies, the name of the state in which the felonies were committed, and the court where the prior felony proceedings occurred.[3] *Id.* § 14-7.3. If a defendant has attained habitual felon status and is convicted of a principal felony, he is sentenced four record levels higher than the classification of the principal felony. N.C.G.S. § 14-7.6 (2025).

Habitual felon status is not itself a separate crime, though, and "[t]he status itself, standing alone, will not support a criminal sentence." *State v. Allen*, 292 N.C. 431, 435 (1977); *see also State v. Patton*, 342 N.C. 633, 635 (1996). Instead, "[t]he only reason for establishing" habitual felon status "is to enhance the punishment which would otherwise be appropriate for the substantive felony which he has allegedly committed while in such a status." *Allen*, 292 N.C. at 435. Because attaining habitual felon status is not a separate crime with its own independent sentence, the proceeding to determine whether a defendant has attained habitual felon status must be connected to the proceeding for the principal felony, and the "habitual felon

―――――――――――

[3] "Prior felonies" refer to the three felonies required for a defendant to be indicted as a habitual felon. "Principal felony" refers to a subsequent felony committed after the three prior felonies to which the habitual felon indictment may attach.

[indictment] is necessarily ancillary to" the principal felony indictment. *Id.* at 433–34; *see also State v. Cheek*, 339 N.C. 725, 727 (1995). On its own, the habitual felon indictment imposes no independent criminal sanctions—for the defendant to be convicted of attaining habitual felon status, proceedings must occur ancillary to proceedings on a principal felony. There is an important distinction between a habitual felon indictment being filed and a defendant being convicted and punished accordingly. The only practical effect of filing the habitual felon indictment before the defendant has committed a principal felony is to put the defendant on notice that, if he or she commits a principal felony, the State intends to proceed on the habitual felon enhancement.

Mr. Garmon challenged his habitual felon indictment because it was filed exactly one year before he was indicted on any charges stemming from the traffic stop and nearly ten months before the traffic stop occurred. The Court of Appeals, bound by the decision of a prior panel in *State v. Ross*, 221 N.C. App. 185 (2012), granted his motion for appropriate relief and vacated his habitual felon plea. *Garmon*, 296 N.C. App. at 733–34.

In *Ross*, the defendant was indicted for attaining habitual felon status on 22 September 2008, with a superseding habitual felon indictment filed on 11 May 2009. 221 N.C. App. at 186. The indictment was explicitly connected to pending charges for possession of a firearm by a felon. *Id.* (charging that defendant "did commit the felony of Possession of a Firearm by Felon . . . while being an habitual felon"

(alteration in original)). Then, on 20 June 2009, the defendant was indicted for bribery of a juror, felony obstruction of justice, and solicitation to commit bribery of a juror. *Id.* at 187. The charges stemmed from the defendant's 17 and 18 June 2009 trial on drug charges unrelated to either indictment. *Id.* at 186–87. At trial, his attorney moved to dismiss all pending uncalendared charges and "the prosecutor admitted that the habitual felon indictment was not calendared." *Id.* at 187 (cleaned up). However, while the trial court initially decided not to proceed on the habitual felon indictment, it ultimately determined the habitual felon indictment was ancillary to the bribery charges. *Id.* The defendant pleaded guilty to attaining habitual felon status, and the trial court sentenced him as a habitual felon. *Id.*

The *Ross* defendant argued that because the habitual felon indictment was filed before the bribery crimes occurred, the trial court lacked jurisdiction to accept his guilty plea to attaining habitual felon status. *Id.* at 188. The Court of Appeals agreed and held that the habitual felon indictment could not have been ancillary to the bribery indictments because they "had not yet occurred when the habitual felon indictment was returned." *Id.* at 192 (citing *State v. Flint*, 199 N.C. App. 709, 718 (2009)). The Court of Appeals vacated the defendant's habitual felon guilty plea and remanded for resentencing. *Id.*

However, the plain text of the Habitual Felon Act, N.C.G.S. §§ 14-7.1 to -7.6 (2025), does not support a requirement that the habitual felon indictment must follow an indictment for a principal felony. "Where the language of a statute is clear and

unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209 (1990). This Court has "consistent[ly] refus[ed] to engraft additional unnecessary burdens upon the due administration of justice." *State v. Langley*, 371 N.C. 389, 392–93 (2018) (cleaned up) (citing *State v. Freeman*, 314 N.C. 432, 436 (1985)).

The provision of the Habitual Felon Act describing indictment requirements states:

> The district attorney, in his or her discretion, may charge a person as a habitual felon pursuant to this Article. An indictment which charges a person who is an habitual felon within the meaning of G.S. 14-7.1 with the commission of any felony under the laws of the State of North Carolina must, in order to sustain a conviction of habitual felon, also charge that said person is an habitual felon. The indictment charging the defendant as an habitual felon shall be separate from the indictment charging him with the principal felony.

N.C.G.S. § 14-7.3. Nothing in the statute requires specific timing for either the habitual felon indictment or the principal felony indictment. The two indictments must be separate, but the State need not wait for a principal felony indictment to file a habitual felon indictment. In fact, since all that is required to indict a defendant for attaining habitual felon status is his or her conviction for three separate felony offenses, the indictment could logically come at any time after the third felony conviction and is not dependent on when the fourth felony offense is charged. The plain language of the Habitual Felon Act does not prohibit the filing of a habitual felon indictment before a defendant is indicted for a principal felony.

Further, since "[n]othing in the plain wording of N.C.G.S. § 14-7.3 requires a specific reference to the predicate substantive felony in the habitual felon indictment," the habitual felon indictment does not need to follow the principal felony indictment in order to meet all statutory requirements. *Cheek*, 339 N.C. at 728; *see also Patton*, 342 N.C. at 636. The habitual felon indictment need only include (1) the dates of the prior felony offenses, (2) the state of the prior felonies, (3) the dates defendant pleaded guilty to or was convicted of the prior felonies, and (4) the court where the convictions occurred. N.C.G.S. § 14-7.3. All the statutory requirements of the habitual felon indictment depend on the prior felonies, not the principal felony. The plain language of the statute does not indicate that the habitual felon indictment must follow the principal felony indictment. In the absence of such a statutory indication, it would be improper to impose an atextual requirement that the habitual felon indictment follow the principal felony indictment. *See Burgess*, 326 N.C. at 209; *Langley*, 371 N.C. at 392–93.

Our caselaw imposes procedural safeguards against problematic habitual felon proceedings detached from a principal felony, whether the indictment is filed before or after the principal felony indictment.[4] Since attaining habitual felon status is not a separate crime, even if a habitual felon indictment is filed before a principal felony indictment, the State cannot independently proceed on the habitual felon indictment

---

[4] From the record, we do not discern any suggestion that the filing of the habitual felon indictment here or in any other case is intended as or represents an abuse of process.

until the defendant is prosecuted for a principal felony. *See Cheek*, 339 N.C. at 727; *Allen*, 292 N.C. at 433–34. And if a habitual felon indictment is filed before a defendant has committed a principal felony, the defense attorney may move to dismiss the indictment. *See* N.C.G.S. § 15A-954(a) (2025). If a defendant who has been indicted for attaining habitual felon status does not commit subsequent felonies, or if the indictment is dismissed, filing a habitual felon indictment does not independently create a criminal cause of action or impose criminal sanctions. *See Cheek*, 339 N.C. at 727; *Allen*, 292 N.C. at 433–34; *Patton*, 342 N.C. at 635. The habitual felon indictment does not establish an independent cause of action to try a defendant for attaining habitual felon status. Instead, the indictment puts the defendant on notice that, if they commit a fourth felony offense, the State will proceed on the habitual felon indictment and, if convicted, the defendant could be sentenced as a habitual felon.

A "basic purpose behind our Habitual Felons Act is to provide notice to defendant that he is being prosecuted for some substantive felony as a recidivist." *Allen*, 292 N.C. at 436 (emphasis omitted); *see also Patton*, 342 N.C. at 636. The notice required for a habitual felon charge is not necessarily the same as for other charges. "[A] defendant charged as a habitual felon is not defending himself against the predicate substantive felony, but against a charge that he has at least three prior felony convictions," so the indictment must give notice that "he is being tried as a recidivist to enable him to prepare an adequate defense to that charge." *Cheek*, 339

N.C. at 729. While the State may file a superseding habitual felon indictment after the principal felony indictment to link the ancillary habitual felon charge to the principal felony, nothing in the plain language of the Habitual Felon Act prohibits the State from filing the habitual felon indictment before the principal felony indictment or requires that the habitual felon indictment be filed after the principal felony indictment.

Here, Mr. Garmon's habitual felon indictment was filed on 14 January 2020, ten months before the traffic stop and one year before he was indicted on the principal felony charges. Mr. Garmon's habitual felon indictment was not defective because it satisfied the four requirements in N.C.G.S. § 14-7.3 and the Habitual Felon Act does not require habitual felon indictments to follow principal felony indictments. Further, Mr. Garmon pleaded guilty to attaining habitual felon status in the same proceeding as the principal felony, so the fact that the indictment was filed before the principal felony occurred did not impose an improper independent sanction on Mr. Garmon. The Court of Appeals erred in holding that a habitual felon indictment must be filed after a principal felony has occurred and therefore erred in granting Mr. Garmon's motion for appropriate relief.

**B. The State failed to provide sufficient evidence that Mr. Garmon kept or maintained the vehicle for the *keeping* of controlled substances, but we remand to the Court of Appeals to consider whether the State provided sufficient evidence that he used the vehicle for the *selling* of controlled substances.**

In North Carolina, it is a crime to "knowingly keep or maintain any . . .

vehicle . . . which is used for the keeping or selling of [controlled substances]." N.C.G.S. § 90-108(a)(7) (2025). The State must prove that the defendant "(1) knowingly (2) kept or maintained (3) a vehicle (4) which was used for the keeping or selling (5) of controlled substances." *State v. Rogers*, 371 N.C. 397, 401 (2018) (cleaned up). Mr. Garmon challenges whether the State adequately proved element four: that he used the vehicle to keep or sell controlled substances.[5]

The word "keep" in N.C.G.S. § 90-108(a)(7) has different definitions under elements two and four. Under element two, it may be defined as "possessing something for at least a short period of time—or intending to retain possession of something in the future—for a certain use." *Id.* at 402. We have previously held that a defendant "kept" a vehicle under element two where officers observed the defendant as the only person in the vehicle and evidence was recovered from the vehicle with a date and the defendant's name. *See id.* at 402–03.

However, as applied to element four, keeping controlled substances, "[w]hen someone 'keep[s]' an object in his car, that word does not refer to possessing something for a designated use; it refers to *storing* that object in his car. That is the 'common and ordinary meaning' of the word 'keeping' in this context." *Id.* (alteration in original) (quoting *In re Clayton-Marcus Co.*, 286 N.C. 215, 219 (1974)). "When subsection 90-108(a)(7) speaks of 'the keeping . . . of' drugs, it is referring to the

---

[5] Both elements two and four were at issue at the Court of Appeals, but because the dissent only addressed element four, Mr. Garmon's notice of appeal does not extend to reach element two. *Garmon*, 296 N.C. App. at 735 (Hampson, J., dissenting).

storing of drugs." *Id.* The defendant does not need to store drugs for a minimum time period, but it is also not sufficient for him to "merely hav[e] drugs in a car." *Id.* at 406.

The keeping or maintaining a vehicle charge is distinct from a possession charge; "we do not believe that our legislature intended to create a separate crime simply because the controlled substance was temporarily in a vehicle." *State v. Mitchell*, 336 N.C. 22, 33 (1994). Possessing a controlled substance on one occasion in the vehicle does not prove that the vehicle is used to keep that controlled substance. *Id.* Instead, the "focus of the inquiry is on the use, not the contents, of the vehicle," with the use determined based on the totality of the circumstances. *Id.* at 34 (emphasis omitted). Therefore, the key question is, under the totality of the circumstances, "whether the defendant was using that vehicle . . . for the storing of drugs." *Rogers*, 371 N.C. at 406.

In *Rogers*, the defendant was convicted of keeping or maintaining a vehicle for the purpose of keeping or selling a controlled substance when officers found two bags of crack cocaine concealed behind the door to the car's gas cap compartment. *Id.* at 399–401. This Court held that the State provided sufficient evidence that the defendant used the vehicle to store the drugs. *Id.* at 403. There, officers observed the defendant stop the car, enter a hotel, and remain there for forty-five minutes without accessing the drugs, which indicated that he used the vehicle for more than merely transporting the drugs. *Id.* at 403–04. Further, the gas cap compartment

was accessible only with a switch inside of the car, and officers did not observe any other person access the compartment or vehicle. *Id.* at 403. And while it was not determinative, this Court found it persuasive that the drugs were concealed and "in a place that is somewhat hard to access—and that is not inside the passenger compartment of the car at all" because "a defendant who wants to store contraband will, all other things equal, want to store it in a hidden place." *Id.* at 404. Under the totality of the circumstances, the evidence was sufficient to support the defendant's conviction. *Id.* at 406.

In contrast, in *Mitchell*, evidence at trial tended to prove that the defendant had possessed marijuana in his vehicle but not that his vehicle was used to keep or sell a controlled substance under subsection 90-108(a)(7). 336 N.C. at 32–33. There, police found a marijuana cigarette in the defendant's car, knew the defendant possessed two bags of marijuana while in the car, and subsequently found drug paraphernalia in his home. *Id.* at 25–26. This Court held that the evidence of drugs in his car was sufficient "for a jury reasonably to infer that defendant possessed the marijuana while he was in his vehicle," but was insufficient to prove that the defendant used his vehicle to keep or sell a controlled substance. *Id.* at 32–33. "At most, the State ha[d] shown that . . . defendant possessed marijuana while in his car and that on the following day his car contained a marijuana cigarette." *Id.* at 33. "This evidence raise[d] at most only a suspicion that defendant's car was used for either keeping or selling marijuana." *Id.* Because "[t]he focus of the inquiry is on the

*use*, not the contents, of the vehicle," the mere possession of controlled substances in the vehicle was not enough for the State to meet its burden to prove that the defendant used his vehicle to keep or sell controlled substances. *Id.* at 34 (emphasis in original).

Here, the totality of the circumstances surrounding Mr. Garmon's possession of the drugs more closely tracks those in *Mitchell* than those in *Rogers*. Mr. Garmon clearly possessed controlled substances in his vehicle but, like the defendant in *Mitchell*, the State failed to produce evidence that he used the vehicle to store the drugs. *See* 336 N.C. at 32–33. In *Rogers*, this Court determined that the drugs' inaccessibility and concealment indicated more than mere possession. 371 N.C. at 403–04. Here, though, the drugs and paraphernalia were accessible in a bookbag in the passenger compartment of the vehicle, not concealed or otherwise made inaccessible. The bookbag was by nature entirely self-contained and meant to facilitate transportation—the opposite of the definition of "keeping" under subsection 90-108(a)(7). *See id.* at 403. Mr. Garmon's bookbag was like the defendant's pocket in *Mitchell*, not the gas cap compartment in *Rogers*. While concealment and inaccessibility are not necessarily determinative, the facts here indicate only possession and do not establish that Mr. Garmon kept controlled substances in the vehicle under the subsection 90-108(a)(7) definition. Mr. Garmon clearly possessed drugs in the vehicle, but the transitory nature of the bookbag and its location in the easily-accessible passenger compartment of the vehicle are inconsistent under our

caselaw with a conclusion that he stored the drugs in the car.

Instead, the drugs in the bookbag, in plain view and within arm's reach of Mr. Garmon, indicate only possession. Like in *Mitchell*, mere possession in the vehicle does not satisfy the State's burden. *See* 336 N.C. at 32–33. The State failed to present more than a scintilla of evidence to prove that Mr. Garmon kept or maintained the vehicle for the purpose of keeping controlled substances. Although the standard for the State to survive a motion to dismiss represents a low bar, the requirement to put on substantial evidence is not so low as to negate any meaningful review. Even with all reasonable inferences made in favor of the State, the evidence here cannot reasonably support that Mr. Garmon kept his vehicle to store drugs.

However, element four asks whether the defendant kept or maintained the vehicle for the keeping *or selling* of controlled substances. *Rogers*, 371 N.C. at 401. Even though there is insufficient evidence to prove that Mr. Garmon kept his vehicle for the purpose of keeping controlled substances, taking all facts in the light most favorable to the State, there may be adequate evidence to support that Mr. Garmon kept or maintained his vehicle for the purpose of selling controlled substances. Because we are limited to review this issue only as an appeal of right based on dissent under N.C.G.S. § 7A-30(2), and the dissent discussed only whether the State satisfied its burden that Mr. Garmon used the vehicle to keep controlled substances, not to sell them, we remand to the Court of Appeals for consideration of whether the State met its burden to prove that Mr. Garmon used his vehicle to sell controlled substances

under N.C.G.S. § 90-108(a)(7).

## IV.    Conclusion

The Court of Appeals erred in granting Mr. Garmon's motion for appropriate relief.  Therefore, we reverse the Court of Appeals' judgment as to Mr. Garmon's habitual felon indictment.  The State failed to present more than a scintilla of evidence that Mr. Garmon used his vehicle to keep controlled substances, but it is not clear whether the State met its burden as to whether Mr. Garmon used the vehicle to sell controlled substances.  Therefore, we remand to the Court of Appeals for further proceedings on whether the trial court erred in denying Mr. Garmon's motion to dismiss.

REVERSED IN PART AND REMANDED.

Chief Justice NEWBY concurring in part and dissenting in part.

I join the majority in concluding that the timing of the indictment did not affect the trial court's subject matter jurisdiction to sentence defendant as a habitual felon. I disagree, however, with the majority's decision to remand the sufficiency-of-the-evidence question regarding whether defendant kept or maintained the vehicle to sell drugs. In my view, that question is properly before us and easily resolved. I respectfully concur in part and dissent in part.

"To convict a defendant of maintaining a vehicle for the keeping or selling of controlled substances, the State must show that the defendant (1) knowingly (2) kept or maintained (3) a vehicle (4) which was used for keeping *or* selling (5) of controlled substances." *State v. Garmon*, 296 N.C. App. 725, 728, 909 S.E.2d 768, 772 (2024) (emphasis added) (citing *State v. Rogers*, 371 N.C. 397, 401, 817 S.E.2d 150, 153 (2018)). Here, as the majority points out, only the fourth element is before this Court.

The trial court instructed the jury, albeit erroneously, that it should find that defendant violated N.C.G.S. § 90-108(a)(7) if the State proved "beyond a reasonable doubt that . . . defendant knowingly kept *and* maintained a vehicle . . . which was used for the purpose of unlawfully keeping *and* selling a controlled substance." (Emphasis added.) This instruction was erroneous because the trial court replaced "keeping *or* selling controlled substances" in subsection 90-108(a)(7) with "keeping *and* selling controlled substances." Neither defendant nor the State objected to this

mistake despite having ample opportunity to do so. Indeed, when the trial court read its proposed instructions to the parties during the charge conference, it used the phrase "keeping and selling" eight times. After evaluating the facts under these erroneously stringent instructions, the jury found defendant guilty of violating subsection 90-108(a)(7).

"A jury is presumed to follow the instructions given by the trial court." *State v. Chambers*, 387 N.C. 521, 527, 915 S.E.2d 96, 100 (2025) (citing *State v. Prevatte*, 356 N.C. 178, 254, 570 S.E.2d 440, 482 (2002)). Necessarily, then, the jury must have found beyond a reasonable doubt that defendant kept or maintained the car to sell drugs. The question becomes whether the record contains substantial evidence to support that finding.

"For a criminal prosecution to survive a motion to dismiss, the State must present 'substantial evidence of all the material elements of the offense charged . . . .'" *Rogers*, 371 N.C. at 401, 817 S.E.2d at 153 (quoting *State v. Campbell*, 368 N.C. 83, 87, 772 S.E.2d 440, 444 (2015)). Substantial evidence is "the amount [of evidence] necessary to persuade a rational juror to accept a conclusion." *State v. Golder*, 374 N.C. 238, 249, 839 S.E.2d 782, 790 (2020). "[E]vidence is deemed less than substantial [only] if it raises no more than mere suspicion or conjecture as to the defendant's guilt." *State v. Butler*, 356 N.C. 141, 145, 567 S.E.2d 137, 139–40 (2002).

"In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all

reasonable inferences." *State v. Fritsch*, 351 N.C. 373, 378–79, 526 S.E.2d 451, 455 (2000). As a "general rule," if "any evidence tends to prove the fact in issue" or "reasonably conduces to its conclusion as a fairly logical and legitimate deduction, . . . the case should be submitted to the jury." *State v. Blagg*, 377 N.C. 482, 488, 858 S.E.2d 268, 273 (2021) (citation modified). "[I]n borderline or close cases, our courts have consistently expressed a preference for submitting issues to the jury." *State v. Weldy*, 271 N.C. App. 788, 803, 844 S.E.2d 357, 368 (2020) (Berger, J., dissenting) (quoting *State v. Coley*, 257 N.C. App. 780, 789, 810 S.E.2d 359, 365 (2018)).

Here, based facially on the record and the facts presented in the majority opinion, the sufficiency-of-the-evidence standard is easily met as to whether defendant kept or maintained a vehicle to sell drugs. The evidence presented at trial tended to show that pursuant to a lawful search of a car driven by defendant, law enforcement found a backpack on the passenger-side floorboard. The bag contained, *inter alia*, a digital scale, a marijuana grinder, plastic bags, and several plastic baggies filled with different substances, later determined to be fentanyl, heroin, and marijuana. Elsewhere in the car, officers recovered a handgun and ammunition, and multiple documents—like a hotel receipt and Social Security card—bearing defendant's name. During the search, defendant told officers: "I got to make money somehow. That's all I know how to do. I know it ain't right, but I just do it for my kids." This is more than enough evidence to survive a motion to dismiss and permitted

the jury to unanimously find that defendant kept or maintained the car to sell controlled substances.

Thus, the matter is easily resolved. The trial court was correct in denying the motion to dismiss the subsection 90-108(a)(7) charge. The Court of Appeals decision upholding the trial court's order should be affirmed. I respectfully concur in part and dissent in part.